Judge Hitchcock
delivered the opinion of the court:
From an examination of the facts agreed, it will be perceived that the duties of the court, so far as this case is concerned, are confined within very narrow limits. It is admitted that these lands were properly forfeited to the state for non-payment of taxes, unless the record of the county auditor is defective in not showing that the proper officers were sworn to the correctness of the delinquencies returned by them on the tax duplicates of 1826 *485 and 1827. And in not showing that the Mad River Courant, a-, paper published at Urbana, in the county of Champaign, in which the delinquent lists for the counties of Logan and Hardin were published in 1827, was a newspaper in general circulation in the-counties of Logan and Hardin. At the time these lands were' taxed, returned delinquent, and offered for sale, the county of Hardin was not organized, but attached to the county of Logan for judicial and other purposes.
We will inquire, in the first place, whether it sufficiently appears of record that the collector in 1826, and the treasurer in-1827, were sworn to the correctness of the delinquencies returned by them. It may aid us in arriving at a correct conclusion upon this question, to ascertain the leading object of the legislature in-requiring this oath. The first section of the act of February 1, 1825, to amend the act defining the duties of county auditor, Chase’s Stat. 1493, provides “that the county auditor, on receiving-from the collector of taxes the receipt of the county treasurer for moneys paid by such collector into the county treasury, shall charge the treasurer with the amount thereof.” The object of this section is, that the auditor may have a check upon the treasurer in the expenditure of the public funds, and have the-means of calling that officer to an account or settlement.
Section 2 provides for a settlement to be made between the-county auditor and county collector for the amount of taxes-charged on the collector’s duplicate for the current year. In making such settlement, the county auditor is authorized to take-from such *duplicate a list of such taxes as the collector has not been able to collect, describing the taxes delinquent as they are described on such duplicate; and is further required to note-thereon the reason assigned by the collector why such tax could not be collected. This is what is denominated the delinquent list. It is to be signed by the collector, and he is required to testify to-its correctness under oath or affirmation, to be administered by the auditor. For the amount of taxes in this delinquent list, the-collector is entitled to credit; and hence the propriety of its being verified by oath. After deducting from the duplicate the-amount of delinquent taxes, and the amount of fees for collection, the auditor is required to certify on the same delinquent list the-balance due to the state, the balance due to the county, the balance due for road purposes, and the balance due to townships in- *486 the county. It is macle the duty of the collector to pay these several balances by the 15th day of January next thereafter. It is also made the duty of the auditor to record the collector’s return, and then deliver the same to the collector, to be by him delivered over to the auditor of state. From a consideration of all these provisions, it is manifest that the leading object of the;.oath was to satisfy the auditor of the correctness of the return as laying a foundation for a settlement by the collectors with the several treasuries for which the moneys had been by him collected. Still, although this was the leading object, it was necessary that all these requisitions should be substantially complied with before the land could be forfeited to the state.
To prevent mistake in the collection of the public revenue, the legislature, at the same session in which the act above relerred to was enacted, have, in section 39 of the act establishing an equitable mode of levying taxes, prescribed the forms to be used- by the several officers concerned in this collection. Chase’s Stat. 1486. Among others, the form of the delinquent list, of the collector’s oath, and of the county auditor’s certificate upon the list, are prescribed. The form of the oath is as follows: “I, C. D., collector of taxes as aforesaid, do solemnly swear that the foregoing list of delinquencies are, to the best of my knowledge and.belief, truly stated, and that the reasons for returning such taxes delinquent as noted thereon do, as I verily believe, exist.” An extract from the records in the auditor’s office of Logan county, introduced in evidence, shows that these forms have been ^literally pursued. Although there is no explicit statement by the auditor that he administered the oath to the treasurer or collector, yet there is all the evidence of this fact, and the only evidence which the legislature have thought proper to require by the statute or in the forms prescribed. Whether these forms are the best that could be devised, it is unnecessary to inquire. They are prescribed, and so long as the revenue officers pursue them, nothing more can be required at their hands. In fact, an examination of the evidence adduced, can leave no doubt upon the mind but that the collector in 1826, and the treasurer in 1827, were sworn to the correctness of the delinquent list for those years.
It will be recollected that, by an act passed January 24, 1827, Chase’s Stat. 1543, the office of county collector was abolished, and the duties of that office transferred to the county treasurer. Hence *487 the delinquent list of 1827 was verified by the oath of this latter officer.
Another objection to the forfeiture is, that the auditor’s record does not furnish evidence that the Mad River Oourant, in which the aforesaid delinquent list was published, in 1827, was a newspaper in.general circulation, either in the county of Logan or Hardin, and that it was not published in either of said counties.
This record shows that the paper in which the advertisement was inserted, was published at Urbana in the county of Champaign, a county adjoinining that of Logan.' It is made the duty of the auditor to have the publication made in a paper printed in the county, or in one in general circulation in the county where the land to be sold is situated. From the circumstance that publication was made in a paper printed in an adjoining county, it is reasonable to infer that none was printed in Logan county. In such case it is probable that a paper printed in an adjoining county would have more general circulation than any other. And in every case where there was no paper printed in the county where the land to be sold was situated, I apprehend it would be .proper for the auditor to advertise in one published in the adjoining county, without stopping to inquire how general the circulation of that paper might be in the county where the .land was sit-mated. In this matter the law is directory to the auditor, and when he has exorcised his discretion, we are disposed to believe, in the ^absence of all proof to the contrary, that he has done his duty.
It is next objected that there' is no note at the foot of the advertisement of the name of the paper in which the advertisement -was published.
The law requires that the advertisement should be inserted in the auditor’s book of records. This was done. But the' law further required that the auditor should certify at the foot of each record the name of the paper wherein the same was published. Chase’s -Slat. 1493. The name of the paper in which the advertisement wag published, is noticed upon the record, but it is not done exactly at the foot of the record of the advertisement itself. It seems to me that this objection is too trifling to defeat even a tax title. If, in the course of business, the auditor, after recording the advertisement, should find it necessary to enter other matters in the record, before noting the name of the paper, or even if *488 the name of the paper should be inserted befoi’e the advertisement itself, the object of the law would be answered, the only object in view being to have it appear of record in what paper the advertisement is published. In the opinion of a majority of the court, the exceptions to the forfeiture in this case are not well taken.
It is not contended for the plaintiff but what the sale of this land was regularly made in 1831, provided the same had been correctly forfeited; but it is insisted that no title passed, because the taxes subsequent to the forfeiture were overcharged, and because the lands were entered on the duplicate for taxation and charged with taxes for the years 1824 and 1825 before the patent issued.
Whether the taxes were overcharged subsequent to 1827 does not clearly appear from the evidence. But even if it were so, we apprehend it could make no difference with the defendant’s title. In consequence of the non-payment of the taxes of 1826-27, the land was forfeited, and thereby the title was vested in the state, to be disposed of as the wisdom of the legislature should afterward prescribe. A subsequent overcharge of taxes could not avoid this forfeiture or affect the title of a subsequent purchaser from the state.
By the act of February 18, 1804, levying a tax on land, Chase’s Stat. 414, lands in the Virginia military district were subjected to taxation as soon as entered. How it was previous to that time, I will not undertake to say, not having *examined with a view to ascertain. But sinco that time, I am not aware of any law exempting such lands from taxation. This land was entered in 1823, surveyed in 1824, and patented in 1826. In 1824, it was subjected to taxation. By the act to provide for the sale of forfeited lands, Chase’s Stat. 1817, it is made the duty of the auditor of state to transmit to each county auditor a list of forfeited lands lying within such county, specifying the amount of tax due thereon for each year, including the year 1836, and for what years- Such list in 1831 was sent to the county auditor of Logan county, and the land now in controversy was charged with the tax of 1824 and 1825, as well as for the years subsequent to 1827. It was right under the law that it should be so, unless the taxes for those years had been paid, of which there is no pretense.
Upon the whole, the court are of opinion that under the agreed " *489 state of facts, in connection with the evidence adduced, the defendant is entitled to judgment. We feel the less regret in coming to this conclusion in the present case, as it is possible that the law may have made ample provision for femes covert to redeem, their lands, when sold for taxes, even after a forfeiture.